**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:19-cv-24195-KMM/Becerra

EDWARD J. DIMARIA,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

**REPORT AND RECOMMENDATION[1] ON EDWARD J. DIMARIA'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

**THIS CAUSE** came before the Court upon Edward J. DiMaria's ("Movant" or "DiMaria") Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (the "Motion"). ECF No. [1]. The United States of America (the "Government") responded to the Motion (the "Government's Response"). ECF No. [5]. Thereafter, DiMaria filed his Reply to the Government's Response (the "Reply"). ECF No. [9]. The Motion is ripe for disposition. After careful review of the Motion, the relevant authorities, the record, and for the reasons discussed below, it is hereby **RECOMMENDED** that the Motion, ECF No. [1], be **DENIED**.

**I.**     **BACKGROUND**

The charges against DiMaria, a Certified Public Accountant ("CPA"), arose from his position as Chief Financial Officer ("CFO") and Senior Vice President of Bankrate, a publicly traded company. Criminal ECF No. [64] at 2.[2] As Bankrate's CFO, DiMaria was responsible for

---

[1] This matter was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge. ECF No. [3].

[2] All citations to the "Criminal ECF" refer to the docket in DiMaria's underlying criminal case, *United States v. DiMaria*, No. 1:17-cr-20898-KMM.

1

overseeing Bankrate's books and records, and for signing and certifying to the SEC that Bankrate's financial statements were truthful and accurate. *Id.* On December 19, 2017, DiMaria was charged in a thirteen-count indictment. *See* Criminal ECF No. [1]. Thereafter, on May 15, 2018, DiMaria was charged in a ten-count Superseding Indictment. Criminal ECF No. [58].

### A.  DiMaria's Guilty Plea and Sentencing

After the Superseding Indictment, DiMaria and the Government entered into a plea agreement. ECF No. [68]. Specifically, on June 28, 2018, DiMaria waived his right to prosecution by indictment, and instead plead guilty to the charges set forth in the Superseding Information. Criminal ECF Nos. [64], [66], [68]. The Superseding Information charged DiMaria with: (1) conspiracy to make false statements to a public company's accountants, to falsify a public company's books and records, and to commit securities fraud, in violation of Title 18 U.S.C. § 371 (Count 1); and (2) making false statements causing a public company to file an inaccurate financial document to the Securities and Exchange Commission ("SEC"), which misrepresented such company's condition and performance, in violation of Title 18 U.S.C. § 1001(a)(2) (Count 2). Criminal ECF No. [64].

In exchange for pleading guilty to the Superseding Information, the Government agreed to seek dismissal of the Superseding Indictment and the underlying Indictment after sentencing (the "Plea Agreement"). Criminal ECF No. [68]. Among its provisions, the Plea Agreement specifically set out the charges DiMaria was pleading guilty to and included an acknowledgment that DiMaria had read charges against him and that they had been fully explained to him by his attorney. *Id.* ¶¶ 2–4. DiMaria also admitted that the Government could prove, beyond a reasonable doubt, that (1) the amount of the loss was at least $25,000,000; (2) his actions caused a loss to 10 or more victims; (3) he used sophisticated means; (4) at the time he committed the offenses, he

was an officer or a director of a publicly traded company; (5) he was an organizer or leader, and (6) the criminal activity involved five or more participants and/or was otherwise extensive. *Id*. ¶ 10. Based on these admissions, DiMaria and the Government agreed to make certain joint recommendations for sentencing that resulted in an offense level of thirty-seven. *Id*. ¶12. DiMaria also agreed to waive his right to appeal his sentence. *Id*. ¶ 16.

The Government and DiMaria also submitted an Agreed Factual Basis for Guilty Plea (the "Factual Proffer"), which established all the essential elements of the crimes to which DiMaria was pleading guilty. Criminal ECF No. [69]. In the Factual Proffer, which DiMaria signed, he admitted, among other things, that he maintained a spreadsheet that documented and tracked expense accruals that were not supported, signed management representation letters to Bankrate's auditors that contained false certifications, and caused Bankrate to file financial statements with the SEC that contained false earnings figures. *Id.* at 2–3.

On June 28, 2018, DiMaria appeared before Magistrate Judge Andrea M. Simonton with his retained counsel Paul Schoeman and Barry Berke, from the law firm of Kramer Levin Naftalis & Frankel LLP, and Robert Watson from the law firm of Kobre & Kim LLP (collectively "Trial Counsel") for a change of plea hearing (the "Plea Hearing"). Criminal ECF No. [73]. Before accepting the change of plea, DiMaria waived his right to proceed by indictment, and was arraigned on the Superseding Information. *Id.* at 12:13–14:8. As part of the waiver of indictment, Judge Simonton explained each of the counts in the Superseding Information in detail, and DiMaria affirmed that he understood each of the counts. *Id.* at 7:4–13:11.

As part of the Rule 11 plea colloquy, DiMaria affirmed that he had signed the Plea Agreement, and that he agreed with all its provisions, including those that set out his offense conduct. *Id.* at 18:4–29:17. Judge Simonton also reviewed in detail the elements for each of the

offenses that DiMaria was pleading guilty to, and DiMaria acknowledged that he understood the elements. *Id.* at 29:18–36:5. The Court then asked DiMaria, who was under oath, whether he had signed the Factual Proffer, whether he had read it, whether he had reviewed it with his lawyers, and whether he agreed that the facts contained therein were accurate. *Id.* at 38:22–39:18. DiMaria stated that he had. *Id.* The Court also asked the Government to recite the factual basis for the plea. *Id.* at 39:19–45:14. After the recitation the Court asked the Government how the loss amount had been calculated. *Id.* at 45:15–16. The Government explained that it had retained a forensic accounting firm and determined that the loss was "slightly above 25 million." *Id.* at 45:17–46:10. The Court asked DiMaria if he had any additional or corrections to the factual basis that was given at the hearing, and DiMaria stated that he did not. *Id.* at 46:11–14. The Court then asked DiMaria if he agreed that those were the facts the government would be able to prove beyond a reasonable doubt if the matter proceeded to trial, and DiMaria answered in the affirmative. *Id.* at 46:15–18.

On June 28, 2018, Judge Simonton entered a Report and Recommendation on DiMaria's change of plea, recommending that the District Court accept DiMaria's guilty plea and that DiMaria be adjudicated guilty of the offense to which he pled guilty. Criminal ECF No. [70]. No objections were filed to the Report and Recommendation, and the District Court adopted it on July 17, 2018 and adjudicated him guilty of the charged offenses. Criminal ECF No. [75].

On September 18, 2018, a Final Pre-Sentence Investigation Report ("PSI") was prepared prior to DiMaria's sentencing. Criminal ECF No. [79]. The PSI detailed DiMaria's offense, including a factual summary of his offense conduct, an assessment of his role in the criminal activity, and a description of the victim impact of his conduct. *Id.* ¶¶ 1–51. The PSI included DiMaria's offense level computation, determining that his base offense level was six. *Id.* ¶¶ 54–69. Because DiMaria was accountable for a loss exceeding $25,000,000.00, the offense level

increased by twenty-two levels. *Id.* ¶ 58. A two-level increase was recommended because the offense involved ten or more victims. *Id.* ¶ 59. An additional two-level "sophisticated means" enhancement was also recommended. *Id.* ¶ 60. The PSI also recommended a four-level increase based on DiMaria's role as an officer or director of a publicly traded company and the violation of securities law. *Id.* ¶ 61. In addition, the PSI added a four-point role enhancement for DiMaria's involvement as a leader or organizer of the criminal activity. *Id.* ¶ 63. After reducing DiMaria's offense level by two points for his acceptance of responsibility and by one point for his assistance in the investigation of his own misconduct, the PSI provided a total offense level of thirty-seven. *Id.* ¶¶ 67–69. Based on that offense level and a criminal history category of I, the advisory guideline range of imprisonment was 210 to 262 months. *Id.* ¶ 120. However, the PSI additionally stated that, in the case at hand, the guideline term could not exceed 120 months. *Id.*

Trial Counsel filed a Sentencing Memorandum on behalf of DiMaria, providing DiMaria's personal history and characteristics. Criminal ECF No. [78] at 7–34. Over 130 letters in support of DiMaria's character were provided to the Court. Criminal ECF No. [78–1]. In addition, the Sentencing Memorandum argued for a "substantial variance, resulting in a sentence of substantially less than 120 months." Criminal ECF No. [78] at 39. In support of the downward variance, Trial Counsel described the shortcomings of the Sentencing Guidelines as applied to fraud cases. *Id.* at 36–39. However, Trial Counsel did not challenge the sentencing enhancements, including the loss amount calculation provided in the PSI. *Id.* The Government filed its opposition to DiMaria's request for a downward variance, requesting that the Court sentence DiMaria to the 120-month statutory maximum. Criminal ECF No. [80].

On September 25, 2018, the Court sentenced DiMaria to a total of 120 months imprisonment as to counts one and two of the Superseding Information, followed by three years

supervised release.  Criminal ECF Nos. [82], [83].  Although DiMaria requested that the Court sentence DiMaria to less than ten years imprisonment, the Court rejected DiMaria's request.  *See* Criminal ECF No. [84] at 13:13–15:1.  The Court reasoned that, based on the Plea Agreement, DiMaria was already receiving a "substantial bargain."  *Id*. at 14:19–22.

### B.  The Instant Motion

On October 10, 2019, DiMaria filed the instant Motion seeking relief pursuant to 28 U.S.C. § 2255.  ECF No. [1].  Specifically, DiMaria's Motion seeks relief based on three claims of ineffective assistance of counsel: (1) that Trial Counsel was ineffective for failing to properly advise DiMaria about elements of his charged offense, his procedural rights, and his available defenses, which resulted in a waiver of DiMaria's right to indictment and trial; (2) that DiMaria's guilty plea was involuntary, unknowing, and unintelligent because DiMaria lacked an adequate understanding of factual and legal matters and is innocent of the offenses charged; and (3) that Trial Counsel was ineffective in stipulating to or failing to contest the sentencing guideline enhancements regarding the loss amount and number of victims.  ECF No. [1] at 13–24.

As to DiMaria's first argument, DiMaria argues that Trial Counsel failed to properly investigate the theory that DiMaria was actually innocent as shown by an internal investigation conducted by outside counsel representing Bankrate's management and an investigation by Bankrate's independent auditors into three specific entries that concluded there was no fraud and that no changes to Bankrate's financial statements were necessary.  *Id.* at 13–15.  As a result of DiMaria lodges his second claim, that he was left with an overall misunderstanding of criminal liability, which rendered his guilty plea constitutionally invalid as involuntary, unknowing, and unintelligent.  *Id.* at 18–19.  Finally, as to his last argument—Trial Counsel's failure to contest the enhancement—DiMaria argues that Trial Counsel was ineffective for advising DiMaria to waive

and failing to challenge the Government's claim of $25,000,000.00 in shareholder losses, which supported the enhancement. *Id.* at 19–21.

In its Answer to the Motion, the Government challenges all three of DiMaria's claims. ECF No. [5].  As to DiMaria's first argument, the Government counters by stating that Trial Counsel acted reasonably and effectively and did in fact "investigate the potential defense of actual innocence" before advising DiMaria about a guilty plea. *Id.* at 9–10.  Next, the Government argues that DiMaria's claim that his plea was involuntary and unintelligent is unsupported by the record because DiMaria acknowledged that his plea was not made under threat or duress; DiMaria had the opportunity to discuss the investigation and charges with Trial Counsel; DiMaria was aware of the consequences of his decision to enter the guilty plea; and the factual statements signed by DiMaria were accurate. *Id.* at 10.  Finally, the Government responds that Trial Counsel was effective as to the sentencing enhancement because the Court addressed the sentencing guidelines and procedures with DiMaria; he agreed, under oath, to the accuracy of the facts supporting the enhancement; and DiMaria's Trial Counsel did in fact challenge the Government's $25,000,000.00 loss calculation, as evidenced by DiMaria's citation to an expert report. *Id.* at 11–12.

In DiMaria's Reply, he argues that the Government's Response simply restates portions of the plea agreement, factual proffer, plea colloquy, and sentencing proceedings instead of addressing Trial Counsel's deficient performance. ECF No. [9] at 1.  Specifically, DiMaria argues that a proper investigation by Trial Counsel would have revealed that DiMaria's actions were "non-material accounting adjustments that neither hid or distorted the true financial condition of the company in an effort to meet or exceed Wall Street analyst expectations or for Mr. DiMaria to unjustly enrich himself." *Id.* at 4.  In support of this claim, DiMaria emphasizes the fact that Bankrate was audited by its Board of Directors and Audit Committee, independent auditor Grant

Thornton, and outside counsel Wachtell Lipton, who all concluded "that there was neither fraud nor any material misstatements in Bankrate's financials." *Id.* As such, DiMaria contends that a proper investigation by Trial Counsel would have undercut the Government's allegations and demonstrated that he had no knowledge of fraud or suspected fraud affecting Bankrate's management. *Id.* at 6–7. Finally, DiMaria contends that (1) the Government fails to offer a "scintilla of evidence or reasoning supporting the $25,000,000.00 loss figure incorporated into the sentencing guidelines calculus," and (2) the Government does not explain "why or how absent constitutionally defective advice from counsel [DiMaria] would have agreed to that loss figure." *Id.* at 7.

## II.     DISCUSSION

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the court that imposed the sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* To obtain this relief on collateral review, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

The Sixth Amended gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI. A claim for ineffective assistance of counsel, including those that challenge guilty pleas, is subject to the two-pronged test set out in *Strickland v. Washington*, 466

U.S. 668, 687 (1984). *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985) (noting that the two-part standard set forth in *Strickland* applies to guilty plea challenges based on ineffective assistance of counsel). Specifically, *Strickland* requires that a criminal defendant show that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease,* 240 F.3d 938, 941 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687–88).

As to the first prong, deficient performance is performance that falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. That is, actions that "no competent counsel would have taken." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted) (citing *Holladay v. Haley*, 209 F.3d 1243, 1253 n.6 (11th Cir. 2000)). However, in proving that counsel's actions were deficient, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To that extent, "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger" and the challenged actions may be considered sound strategy. *Chandler*, 218 F.3d at 1316 (footnote omitted) (citing *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998)); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*. Within the context of

pleas, the defendant must demonstrate that but for counsel's constitutionally ineffective performance, the defendant "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one. *Strickland*, 466 U.S. at 697. The Eleventh Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between." *Chandler*, 218 F.3d at 1313 (alteration omitted) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995)). The burden of persuasion on the Movant is preponderance of the evidence. *Id.*

## A. DiMaria's Claims of Ineffective Assistance of Counsel (Claim One) Which Led to DiMaria's Involuntary Plea (Claim Two) Should Be Denied As Conclusory and Lacking Foundation.

DiMaria's first two claims were addressed together in the Motion and will be addressed in the same fashion here. DiMaria alleges that Trial Counsel failed to perform or complete an adequate investigation that would have established that Defendant is innocent of the offenses to which he ultimately pled guilty. ECF No. [1] at 13. Specifically, DiMaria alleges that Trial Counsel should have been aware of an internal investigation that was conducted by Grant Thornton and Wachtell Lipton ("Grant/Wachtell Internal Investigation Report") and should have been aware of four reports prepared by expert witnesses. *Id.* at 13–15. Three of the expert reports, according to the Motion, established that Defendant had not engaged in criminal or fraudulent conduct, and the fourth report showed that the Government's loss calculations were flawed and grossly exaggerated. *Id.* at 14–15. DiMaria claims that Trial Counsel should have reviewed and

investigated the reports because doing so would have shown that Defendant was actually innocent of the charges to which he plead guilty. *Id.* In short, DiMaria argues that if Trial Counsel had properly investigated the case, he would have uncovered that DiMaria was innocent, and that Trial Counsel's failure to uncover his innocence resulted in DiMaria's plea being involuntary, unknowing, and unintelligent.

The undersigned finds no support for the proposition that Trial Counsel's performance was deficient, or that Trial Counsel's advice rendered DiMaria's guilty plea involuntary, unknowing, or unintelligent. As an initial matter, the claim that Trial Counsel failed to investigate the matter is bellied by the Motion itself. Indeed, the Motion argues that the Grant/Wachtell Internal Investigation Report concluded that he was innocent. However, DiMaria does not claim that Trial Counsel was unaware of the internal investigation, nor does DiMaria claim that he was unaware of this internal investigation. The fact that Trial Counsel and DiMaria were aware of the Grant/Wachtell Internal Investigation Report that the Motion now relies on is well supported in the record. Indeed, in the Sentencing Memorandum filed with the Court, Trial Counsel noted that Bankrate "simultaneously conducted two internal investigations, as did Bankrate's independent auditor." Criminal ECF [78] at 28. Furthermore, the Government's Response also clarifies that not only was DiMaria aware of the findings in the company's internal investigation reports, DiMaria participated as the Bankrate's CFO in the internal investigation. ECF No. [5] at 9. As to Trial Counsel, the Government notes that the Grant/Wachtell Internal Investigation Report was provided to Trial Counsel in discovery both in this case and in the SEC matter. *Id.* Indeed, DiMaria's Reply does not dispute that he and his counsel knew of the Grant/Wachtell Internal Investigation Report. In short, there appears to be no dispute that Trial Counsel had the Grant/Wachtell Internal Investigation Report.

Of course, given that Trial Counsel had the Grant/Wachtell Internal Investigation Report, which contained the exculpatory conclusions, the question becomes what further investigation should have been done that was not done.  The Petition provides no answer.  Instead, the Petition lists ten "facts" that DiMaria claims Trial Counsel should have uncovered without stating how Trial Counsel would have uncovered them.  ECF No. [1] at 15–17.  The list contains no citations and offers no explanation as to how, why, or when they became "facts."  Indeed, the Motion is silent as to whether those findings are new, and if so, how they were uncovered, or if those findings were part of the Grant/Wachtell Internal Investigation Report.  The same is true for what appears to be the underlying theory of the Motion, and is again presented in the Reply, that the accounting errors attributable to DiMaria were not material, and therefore, should not have subjected him to a criminal penalty.  ECF No. [1] at 18–19; ECF No. [9] 4–7.  However, DiMaria makes this conclusory statement without any suggestion of proof (i.e., affidavit, case law, detailed argument) to supports that position.  Indeed, this deficiency is further highlighted by the fact that the Motion does not even attach the Grant/Wachtell Internal Investigation Report, the expert report, or any other material.  The Motion simply states, in a conclusory fashion, that there are facts that should have been uncovered and that were not uncovered by Trial Counsel.

Using an objective standard, the undersigned cannot find that Trial Counsel failed to adequately investigate the allegations against DiMaria.  Indeed, the Motion fails to identify what it is that Trial Counsel should have done.  The conclusory statement, that Trial Counsel should have done a more thorough investigation, leaves the Court with nothing to evaluate.  For example, should Trial Counsel have hired an expert, should they have reviewed documents they did not request, did they err in their review of the evidence?  The Motion provides none of this; instead, it simply offers conclusions that DiMaria's conduct was not a crime.  Stating that he is innocent, and

that more investigation would have shown that, is nothing more than a conclusory allegation that is insufficient to either warrant a hearing or grant the Movant any relief.

The Motion also fails to identify what advice Trial Counsel gave DiMaria that would rise to ineffective counsel. Indeed, although the Motion claims there was "erroneous advice" there is no effort at all in the Petition to identify that advice. Instead, DiMaria's Petition generically notes that Trial Counsel failed to advise DiMaria about the elements of his charged offense, his procedural rights, and his available defenses, which resulted in a waiver of DiMaria's right to indictment and trial. ECF No. [1] at 17–19. Then, in the Reply, he adds that Trial Counsel misadvised him regarding the Government's "burden of having to prove beyond a reasonable doubt critical elements of each of the charges, including the requirement to prove materiality." ECF No. [9] at 1. The Plea Agreement, the Factual Proffer, and DiMaria's statements during the Plea Colloquy readily undermine this assertion.

Any claim that DiMaria lacked an adequate understanding of factual and legal matters, including the elements of his offenses and his procedural rights, is unquestionably bellied by the record. As noted above, while under oath during his plea colloquy, DiMaria assured the Court of his understanding of the charges and their elements contained in counts one and two. Criminal ECF No. [73] at 34:16–19, 35:23–25. DiMaria stated that his decision to enter into the guilty plea was free from coercion. *Id.* at 37:15–38:6. Notably, DiMaria admitted that he had sufficient time to review his case with Trial Counsel, and that he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by [his] lawyer." *Id.* at 16:13–16. The record plainly establishes that DiMaria's plea was entered voluntarily, knowingly, and intelligently with the advice of effective counsel. *Id.* at 13:7–11, 51:3–12. Indeed, as part of the plea, the Court thoroughly explained, and ensured that Movant understood all elements of his charges, the

procedural rights he was waiving, and the possible consequences of the guilty plea. *See* Criminal ECF No. [73].

Such "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *accord United States v. Gonzalez–Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."). Because DiMaria made statements under oath at a plea colloquy, "he bears a heavy burden to show his statements were false." *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir.1988) (per curiam). Indeed, a guilty plea is voluntary and knowing where, "(1) the guilty plea is free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant knows and understands the consequences of his guilty plea." *United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005) (alterations omitted) (quoting *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999)). On this record, the Court sees no basis to find that Trial Counsel's advice rendered the DiMaria's guilty plea involuntary, unknowing, or unintelligent.

**B. DiMaria's Claim of Ineffective Assistance for Trial Counsel's Failure to Stipulate to or Failure to Contest Sentencing Guideline Enhancements Should Be Denied.**

In DiMaria's final claim, he asserts that Trial Counsel provided ineffective assistance at sentencing, resulting in substantial prejudice. ECF No. [1] at 19–20. Specifically, DiMaria alleges that his Trial Counsel was ineffective in advising him to accept the proposed loss amount of over $25,000,000.00, and "in failing to challenge the guideline calculation errors, despite knowing or having reason to know that the loss and victim figures could neither factually nor legally be attributed to [him] and were subject to viable challenge caused substantial prejudice and warrants relief." ECF No. [1] at 21. Movant posits that Trial Counsel's ineffective assistance stems from a "fundamental misunderstanding of the law, the facts, and the procedures applicable in relation

to the sentencing factors." *Id.* at 22.  In addition, DiMaria states that the resulting prejudice in this case was "substantial additional imprisonment." *Id.*  He maintains the actual loss amount is between zero and $40,000.00, corresponding to a maximum sentencing range of 30 to 37 months. *Id.* at 21.  DiMaria further claims that, "[i]f [he] had been properly advised as to the unfounded premise for the unfavorable waivers in the plea agreement—including the significant overstatement of any loss amount and related victim enhancement—[he] would have proceeded to trial rather than accept such terms." *Id.* at 22.

As a preliminary matter, this ineffective assistance of counsel claim is also subject to the two-prong *Strickland* test.  *See Strickland*, 466 U.S. at 687.  Accordingly, to prevail in his Motion, DiMaria must overcome the strong presumption in favor of Trial Counsel's competence by demonstrating that Trial Counsel was unreasonable in advising him to accept the proposed loss amount and for its failure to challenge the guideline calculation errors at sentencing. *See Chandler*, 218 F.3d at 1313–14.  Additionally, to establish prejudice, DiMaria must prove that a more favorable sentence was reasonably probable. *See Armas v. United States*, No. 18-25178-CV, 2020 U.S. Dist. LEXIS 140831, at *12 (S.D. Fla. Aug. 5, 2020) (citing *Strickland*, 466 U.S. at 694).

Here, DiMaria's claim that Trial Counsel's deficient performance was "premised on a fundamental misunderstanding of the law, facts, and procedures applicable in relation to the sentencing factors" is without merit.  *See* ECF No. [1] at 22.  As with the first two claims, DiMaria fails to allege what Trial Counsel's misunderstanding was.  Instead, DiMaria provides a conclusory statement that Trial Counsel misunderstood the law without any further explanation.

Movant mistakenly relies on *Hinton v. Alabama*, 571 U.S. 263, 275 (2014), where the court held that the petitioner's counsel provided inadequate assistance by making an "inexcusable mistake of law." *See* ECF No. [1] at 23.  In *Hinton*, however, the Court found that the trial attorney

failed to request funding to replace an inadequate expert because he believed, mistakenly, that he had received all the funding he could under the state's rules. 571 U.S. at 273–74. The Court found that counsel was deficient because his belief that he could not receive more funds was wrong. *Id.* at 274–75. Unlike the petitioner in *Hinton*, DiMaria fails to identify, other than in a conclusory fashion, what law, fact, or procedure Trial Counsel fundamentally misunderstood. Accordingly, DiMaria's conclusory assertion of Trial Counsel's misunderstanding is impossible to adjudicate because it fails to provide any basis from which the Court could make any finding.

Furthermore, DiMaria fails to show that Trial Counsel was deficient in advising him to accept the Government's loss calculation. DiMaria contends that counsel was ineffective in advising him to accept the Government's proposed loss amount given that the loss calculation was "unfounded." ECF No. [1] at 21. However, the record shows that the Government's calculation of approximately $25 million in losses is substantiated. Criminal ECF No. [73] at 45–46. During the Change of Plea Hearing, the Court specifically asked the Government how the loss amount was calculated. *Id.* at 45:15–16. In response, the Government detailed the investigation conducted to calculate the $25 million in total investor loss. *Id.* at 45:17–46:10. DiMaria agreed, during the Plea Hearing, that the calculation was correct. *Id.* at 46:15–18.

Furthermore, DiMaria cannot demonstrate that Trial Counsel advising him to accept the loss calculation fell below an objective standard of reasonableness. In fact, DiMaria's acceptance of the plea offer, including the proposed loss amount, removed DiMaria from exposure to the possibility of a twenty-five-year sentence to no more than a ten-year sentence. Criminal ECF Nos. [58] at 30–31, [68] at 4. In light of the reduced statutory maximum sentence and the fact that the Government had evidence to support its calculation, the undersigned finds it reasonable for Trial

Counsel to make a strategic decision to advise Movant to accept the loss calculation to avoid the possibility of a longer sentence.

Finally, the Court is unpersuaded by DiMaria's assertion that Trial Counsel was deficient for failing to challenge the sentencing guideline calculations. *See* ECF No. [1] at 19. While Trial Counsel opted not to challenge the calculations, Criminal ECF No. [84] at 3, he brought forth other viable defenses to persuade the Court to sentence DiMaria to less than the ten-year statutory maximum. *See* Criminal ECF Nos. [78] at 35–54; [84] at 4–9. For instance, Trial Counsel requested a variance under 18 U.S.C. § 3553(a) for a sentence below the 120 months. Criminal ECF No. [78] at 35. In Trial Counsel's attempt to persuade the Court to sentence DiMaria below the statutory maximum, Trial Counsel provided over 130 letters to demonstrate DiMaria's character. Criminal ECF No. [78–1]. Trial Counsel also provided the Court with two cases where courts imposed lesser sentenced of 18 and 54 months for similar offenses. Criminal ECF No. [78] at 47. Considering the several alternative arguments raised by Trial Counsel at the Sentencing Hearing and in the Sentencing Memorandum, the undersigned finds that Trial Counsel's decision not to challenge the calculations does not amount to deficient performance.

The Court notes that prior to sentencing, DiMaria had already accepted the plea offer and agreed to the facts supporting the enhancements, including the $25 million loss calculation. Criminal ECF No. [68] at 5. Accordingly, it would have been futile for Trial Counsel to challenge the sentencing guideline calculations after DiMaria had admitted that the calculations were accurate. *See Renteria v. United States*, No. 18-25275-CV, 2021 U.S. Dist. LEXIS 17016, at *5 (S.D. Fla. Jan. 27, 2021) (finding counsel not ineffective for failing to challenge the government's factual basis where such challenge would have been futile), *report and recommendation adopted*, No. 18-25275-CIV, 2021 U.S. Dist. LEXIS 33178 (S.D. Fla. Feb. 23, 2021). In sum, the record

supports a finding that Trial Counsel's performance was not deficient, given that Trial Counsel's

actions were reasonable under the circumstances.

Indeed, the Plea Agreement capped DiMaria's exposure to ten years of incarceration, a

substantial benefit.  In response to Trial Counsel's argument that DiMaria should be sentenced

below that statutory maximum, the District Court noted:

> [T]he fact that Mr. DiMaria is exposed to no more than ten years to me
> suggests that he has already received the benefit of a substantial bargain that
> he entered into with the government.  Had he gone to trial on the original
> indictment, he would have been looking at at least double of what he is
> exposed to here.  So [he has] already been more than favorably and
> generously treated by the government with the plea agreement that was
> entered into.

Criminal ECF No. [84] at 14:19–15:1.  In addition, the District Court pointed to a case similar to

DiMaria's where the defendant, a CEO of a publicly traded company, was sentenced to twenty-

five years for embezzling approximately twenty-five million dollars.  *Id.* at 15.  Prior to sentencing

DiMaria, the District Court read excerpts from *United States v. Kuhlman*, 711 F.3d 1321, 1329

(11th Cir. 2013), addressing the need for a "meaningful period of incarceration" for adequate

deterrence of white-collar crime.  *Id.*  Notably, the District Court emphasized that: "white-collar

crime . . . can be affected and reduced [with] serious punishment.  We need not dwell, however on

the dollar amount of those schemes because the criminal motive in each case was the same as the

motive here, greed."  *Id.* at 16:12–18 (quoting *Kuhlman*, 711 F.3d at 1329).  Thus, the statements

made by the District Court suggests that it was unlikely that the Court would have provided

DiMaria with a more favorable sentence had Trial Counsel challenged the guideline enhancements.

Furthermore, DiMaria's contention that he would have proceeded to trial instead of

accepting the plea terms had he been "properly advised as to the unfounded premise for the

unfavorable waivers in the plea agreement" is unfounded.  *See* ECF No. [1] at 22.  Indeed, the

Court thoroughly explained the sentencing procedures to DiMaria and directed the Government to describe the factual basis on which the Court would base DiMaria's sentence. ECF No. [5] at 11. DiMaria was given the opportunity to make any corrections to the factual basis presented by the Government during the Change of Plea Hearing. Criminal ECF No. [73] at 46:11–14. However, DiMaria made no corrections and admitted that the facts supporting the sentencing enhancements could be proven beyond a reasonable doubt. *Id.* The undersigned would be hard pressed to believe that DiMaria, given his experience as a CPA and as the CFO of Bankrate, would be unable to identify an error in the loss calculation after a thorough explanation by the Court and the Government—especially an error that overstates a loss calculation by more than $24 million. *See* ECF [1] at 21. Accordingly, DiMaria fails to show a reasonable probability that he would have proceeded to trial had Trial Counsel advised him differently.

## III.    EVIDENTIARY HEARING

In DiMaria's Motion, he "requests that the Court grant his request for an evidentiary hearing and discovery to fully establish his entitlement to relief." ECF No. [1] at 23. As a threshold matter, the Court notes that DiMaria retains the burden of establishing the need for an evidentiary hearing. *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To meet this burden and be entitled to a hearing, DiMaria must demonstrate that his allegations, if proved, would establish his right to collateral relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citing *Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000)). Pursuant to section 28 U.S.C. § 2255, "the court shall grant a hearing to determine the issues and make findings of fact and conclusions of law 'unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Holmes v. United States*, 876 F.2d 1545, 1552–53 (quoting 28 U.S.C. § 2255). A district court does "not abuse its considerable discretion in declining to hold

a § 2255(b) evidentiary hearing" when claims of an involuntary plea are "based only on conclusory and incredible allegations." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014). Indeed, as underscored in *Holmes*, however, an evidentiary hearing is not required each time a movant brings forth a section 2255 claim of ineffective assistance of counsel. 876 F.2d at 1553. Courts are not required to hold an evidentiary hearing on "patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record." *Id.* (quoting *United States v. Guerra*, 588 F.2d 519, 520–21 (5th Cir. 1979)).

Based on the record evidence presented above, the undersigned finds that DiMaria is not entitled to collateral relief and an evidentiary hearing is not warranted. The preceding analysis plainly establishes that DiMaria's claims of Trial Counsel's ineffective assistance are contradicted by the record and devoid of merit. The record contains compelling evidence demonstrating that DiMaria entered into the guilty plea knowingly, intelligently, and voluntarily. Moreover, DiMaria fails to establish that he suffered any prejudice, as Trial Counsel's actions resulted in the "substantial bargain" of a significantly reduced potential maximum sentence. Accordingly, DiMaria is not entitled to an evidentiary hearing because this Court can "adequately assess [Movant's] claim without further factual development." *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that DiMaria's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, ECF No. [1], be **DENIED**. In addition, DiMaria's request for an evidentiary hearing should be **DENIED** and no certificate of appealability should be issued.

## V.      OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."   11th Cir. R. 3–1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on September 13, 2021.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**